UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| TERRANCE J. O'CONNOR, | ) | No. 05-CV-0064-AAM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| v. | ) | AND GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT, |
| JO ANNE B. BARNHART, | ) | *INTER ALIA* |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

BEFORE THE COURT are cross motions for Summary Judgment. (Ct. Rec. 12, 15). Attorney Lora Lee Stover represents Terrance O'Connor (Plaintiff); Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Richard A. Morris represent the Defendant. After reviewing the administrative record and pleadings filed by the parties, the court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.

## I.    JURISDICTION

Mr. O'Connor protectively filed for Disability Insurance Benefits (DIB) and Social Security Income (SSI) on July 29, 2002. (Tr. 68-70, 655-58.) He alleged disability due to bipolar disorder and post traumatic stress disorder (PTSD) with an onset date of June 1999. (Tr. 83.) Plaintiff's applications were

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

denied initially and upon reconsideration.  (Tr. 38, 44.)  He timely requested a hearing before an administrative law judge (ALJ), which was held on January 7, 2004.  (Tr. 48, 665-96.)   ALJ John Hood denied his application on April 20, 2004, and the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5, 26-30.)   The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

## II.   SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

> *Step 1*:  Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If he is, benefits are denied.  If he is not, the decision maker proceeds to step two.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

*Step 2*:  Does the claimant have a medically severe impairment or combination of impairments?  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step.

*Step 3*:  Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

*Step 4*:  Does the impairment prevent the claimant from performing work he has performed in the past?  20 C.F.R. §§404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's residual functional capacity assessment is considered.  If the claimant is able to perform his previous work, he is not disabled.  If the claimant cannot perform his previous work, then the evaluation proceeds to the fifth and final step.

*Step 5*:  Is the claimant able to perform other work in the national economy in view of his age, education, work experience and residual functional capacity?  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

### III.    STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### IV.    STATEMENT OF THE CASE

Detailed facts of the case are set forth in the transcript of proceedings and the parties' pleadings and are briefly summarized here.  Plaintiff was 55 years old at the time of the ALJ hearing. (Tr. 676.)  He has a high school education and has worked as a taper and dry wall installer, a janitor, general maintenance worker, painter and roofer (Tr. 92, 688.)  He was not married and reported no children, although there were references in the record to a son with whom he had no contact.  (Tr.640.)  Plaintiff has a long history of substance abuse.  He reported he has used drugs for the last 35 years, including methamphetamine, marijuana, and cocaine.  He reported he lived in a "crack house" for twelve

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

years.  (Tr. 640.)  He was in chemical dependency treatment at the
time of the hearing with YFA Connections (YFA), where he had been
going since March 2002.  (Tr. 641, 685.)  He testified that he
lived alone in an apartment and was able to attend to his personal
needs.  He stated he did his own household chores and shopping and
attended substance abuse treatment meetings three times a week.
(Tr. 684.)  He stated he was also working part-time in his
apartment building, doing yard work and general maintenance for
his landlord.  (Tr. 683-84.)  He testified he could not work due
to being partially blind in one eye, sleep deprivation and bipolar
symptoms.  (Tr. 680-81.)

<h3 style="text-align:center">V.  ADMINISTRATIVE DECISION</h3>

At step one, ALJ Hood found Plaintiff had not engaged in
substantial gainful activity since his alleged onset date; at step
two and three, he found Plaintiff had the "severe" impairment of
drug and alcohol abuse which met the criteria of section 12.04 A
and B of the listed impairments of Appendix 1, Subpart P,
Regulation No. 4.  (Tr. 29.)  The ALJ further found that pursuant
to Public Law 104-121, this impairment could not be considered in
determining disability. [1]  (Id.)  The ALJ determined Plaintiff's
allegations regarding his limitations were not totally credible.
He then evaluated Plaintiff's alleged impairments absent drug and
alcohol abuse and concluded Plaintiff had no "severe" impairment

---

[1]  Public Law 104-121 is codified as 42 U.S.C. § 423
(d)(2)(C), effective March 2, 2004, and states in pertinent part:
"[a]n individual shall not be considered disabled . . . if
alcoholism or drug addiction would . . . be a contributing factor
material to the Commissioner's determination that the individual
is disabled."

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

1  that would preclude performance of his past relevant work.  (Id.)

2  Thus, the ALJ found Plaintiff "not disabled" as defined by the

3  Social Security Act.

**VI. ISSUES**

4

5      The question presented is whether the ALJ's decision is

6  supported by substantial evidence and is free of legal error.

7  Specifically, Plaintiff contends the ALJ erred when he: (1) did

8  not give proper weight to treating providers' opinions; (2) found

9  Plaintiff's substance abuse was a material factor in his

10 disability; and (3) found his allegations not totally credible.

11 (Ct. Rec. 13 at 9).

**VII.  DISCUSSION**

12

13 A.    Drug and Alcohol Addiction

14      Plaintiff argues the ALJ erred when he failed to conduct a

15 "differentiating" analysis as required by the regulations,

16 specifically 20 C.F.R. § 404.1535.  (Ct. Rec. 13 at 12).

17      The Social Security Act bars payment of benefits when drug

18 addiction and/or alcoholism (DAA) is a contributing factor

19 material to a disability claim.  42 U.S.C. §§ 423(d)(2)©),

20 1382(a)(3)(J); *Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.

21 1998).  "Material" means that the individual would not be found

22 disabled if he stopped using drugs and/or alcohol.  Plaintiff has

23 the burden of showing that his DAA is not a contributing material

24 factor to disability.  *Ball v. Massanari*, 254 F.3d 817, 823 (9th

25 Cir. 2001).  If there is evidence of DAA and the individual

26 succeeds in proving he is disabled, the Commissioner must

27 determine whether the DAA is material to the determination of

28 disability.  20 C.F.R. §§ 404.1535, 416.935.  If an ALJ finds that

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether DAA is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

Here, the ALJ found Plaintiff had the "severe" impairment of polysubstance abuse, which met the Listings, and drug-induced mood disorders that were severe enough to meet or equal the Listings. (Tr. 28.) He found Plaintiff was disabled, but was precluded from receiving social security benefits by Public Law 104-121. (Tr. 29.) The ALJ then proceeded with the sequential evaluation of Plaintiff's alleged impairments without DAA and, at step two, found Plaintiff had no "severe" impairments and was not disabled. (Tr. 28.) Specifically, the ALJ found Plaintiff's bipolar diagnosis was retracted by the examining psychologist who made the initial diagnosis, and other mood disorders were due to DAA. (Id.) The ALJ found the evidence did not establish clearly that Plaintiff was clean and sober at any time during the relevant period. (Id.) He found that the diagnosis of PTSD in the record was incorrect because the Plaintiff lied about serving in Viet Nam, the alleged trigger for his PTSD symptoms. (Id.) The Plaintiff failed to meet his burden of proof at step two; thus, the ALJ did not need to proceed further. *Ball*, 254 F.3d at 822-23; *see also* 20 C.F.R. §§ 404.1520 (a)(4)(ii) and (c)(if no "severe" impairment found at step two, claimant is found not

disabled, and the Commissioner will not consider claimant's age, education and work experience).  The ALJ properly analyzed Plaintiff's impairments with and without  DAA.  *See infra* note 4. Further, the record in its entirety supports the ALJ's determination that Plaintiff did not have any "severe" impairment except DAA.

B.    Medical Opinions

Plaintiff argues the ALJ did not give proper weight to the opinions of his treating providers.  He also contends medical expert Dr. Bostwick's testimony was based on speculation and not supported by the record.   (Ct. Rec. 13 at 9, 13).

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908.  The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  An impairment or combination of impairments is not "severe" if it does not significantly limit a person's ability to do basic work activities, such as physical functions, capacities for seeing, hearing and speaking; understanding, carrying out and remembering simple instructions, use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

20 C.F.R. § 404.1521.

To determine if there is a "severe" impairment, the ALJ must consider the opinions of Plaintiff's medical providers. A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (*quoting Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Smolen v. Chater,* 80 F.3d 1273, 1285- 88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful in his adjudication. *Andrews,* 53 F.3d at 1041 *(citing Magallanes,* 881 F.2nd at 753). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Here, the ALJ gave a summary of medical records submitted by examining psychologists Debra Brown, Ph.D., and Frank Rosekrans, Ph.D. and found that the medical evidence established one clear diagnosis: poly-substance abuse. (Tr. 28.) This finding is supported by the record.

Dr. Brown evaluated Plaintiff several times between July 2000 and September 2002. (Tr. 190, 194, 198, 202, 210, 214.) Initially, in 2000, Dr. Brown diagnosed Plaintiff with bipolar disorder with marked limitations in cognitive and social factors. (Tr. 192.) Plaintiff relies upon this diagnosis as evidence of his bipolar disorder. (Ct. Rec. 13 at 12.) However, Dr. Brown

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

retracted this diagnosis when she learned that Plaintiff was an active drug user. (Tr. 211, 214.)  In September, she re-evaluated Plaintiff with the knowledge that he had been in substance abuse treatment six times and had relapsed in the prior two months on methamphetamine and cannabis. (Id.)  Dr. Brown stated, "If he was using meth-amphetamine when I first diagnosed him with BiPolar disorder [in 2000] it is possible that that diagnosis was not accurate.  Abstinence needs to be confirmed." (Tr. 211, 215.)  It is noted by the court that medical records dated March 13, 2001, from the Community Health Association of Spokane (CHAS) clinic indicate Plaintiff was smoking "pot, taking black beauty [methamphetamine]" and qualified for state funded chemical dependency treatment. (Tr. 253.)  Despite a denial by Plaintiff on May 15, 2001, of using any chemicals at that time, the UA given on that date tested positive for cannabis carboxyl. (Tr. 254.) In June 2001, laboratory results reported positive for amphetamine, methamphetamine, cannabis, carboxyl-THC. (Tr. 255.)

In the September 2002, evaluation, Dr. Brown concluded that Plaintiff was working nearly half time and "doing relatively well."  She found moderate limitations in his functional ability to remember and follow complex instruction, learn new tasks and exercise judgment and make decisions. (Tr. 212.)  She found only mild limitations in his social functions. (Id.)  However, due to his "ongoing substance abuse/dependence and declining cognitive status," she recommended a protective payee. (Tr. 214.)  The ALJ discussed Dr. Brown's various reports in his decision, and it is clear he did not reject her most recent, fully informed report; rather, he relied upon her September 2002, diagnosis and

assessment in his final determination of DAA-induced disability. (Tr. 28, 210-216.) In that assessment, she specifically stated that after 60 days of abstinence from alcohol or drug use, the Plaintiff "would be alright." (Tr. 211.) The doctor indicated she did not believe the Plaintiff was being totally honest about his alcohol and drug use. (Tr. 212.)

Dr. Rosekrans evaluated Plaintiff November 2002, and again in February 2004. (Tr. 217-29, 640-54.) Plaintiff reported living in a "crack" house for twelve years and being involved with drugs for thirty-five years. He admitted that for the five years prior to his 2002 evaluation, he was injecting crystal meth into his neck because his arm veins had collapsed. (Tr. 217.) He also admitted that he had lied about his military service in Viet Nam, the alleged source of his PTSD. (Id.) After the hearing, but before the ALJ issued his decision, Dr. Rosekrans evaluated Plaintiff and administered the Mini-Mental Status Exam (MMSE), Minnesota Multiphasic Personality Inventory (MMPI-2), Test of Memory Malingering (TOMM),and the Wechsler Individual Achievement Test (abbreviated), the results of which were attached to the psychological evaluation. (Tr. 67, 640-52.) Dr. Rosekrans found the results were valid, but some low test scores seemed to be due to poor effort. (Tr. 646.) Although Dr. Rosekrans opined that Plaintiff had no cognitive deficiencies, that his memory was not impaired and that the clinical scales in the MMPI-2 test results did not indicate bipolar disorder, the psychologist stated "he may or may not be bipolar, but I do not think that it can be diagnosed from [his] history" due to Plaintiff's "life-time of mood-altering drugs." (Id.) Dr. Rosekrans diagnosed amphetamine dependence,

cannabis dependence, and alcohol abuse, all in early partial remission. (Tr. 645.) In his Medical Source Statement, he concluded Plaintiff was "slightly" limited in his (1) ability to understand, remember and carry out instructions, and (2) ability to respond appropriately to supervision, co-workers and work pressures in a work setting. (Tr. 653-54.)

Medical expert Allen Bostwick, Ph.D. testified at the hearing that the bipolar and depressive disorder diagnoses given in other medical records, e.g. CHAS and YFA, were a "carryover" from Dr. Brown's misinformed evaluation in July 2000, and Plaintiff's medications were simply treating symptoms that Plaintiff reported. [2] (Tr. 675.) Contrary to Plaintiff's argument that Dr. Bostwick's opinions were based on speculation, Dr. Bostwick had the advantage of reviewing of all the evidence in making his findings, with the exception of Dr. Rosekrans' February 2004 report. Dr. Bostwick opined there was no clinical evidence of bipolar disorder, PTSD or cognitive disorder. (Tr. 671-72, 675.) He concluded Plaintiff met the requirements of the Listings under 12.09 (substance addiction disorder) until sometime in 2000, and afterwards, had a substance-induced mood disorder under 12.04, which was not "severe". (Tr. 669-70.) To the extent that the ALJ relied upon them, the medical expert's opinions are substantially supported by pre- and post- hearing psychological evaluations from examining psychologists. (Tr. 28.)

In addition to the records summarized by the ALJ, Plaintiff

---

[2]    Dr. Bostwick was unaware of any adverse side effects from the reported medication other than slowing of reflexes. Plaintiff testified he felt no significant side effects. (Tr. 675, 681.)

submitted extensive Progress Notes from YFA.  His counselor,
Kathleen Armstrong, M.Ed., LMHC, CDP, completed several
psychological evaluation forms. (Tr. 338, 348, 661.)  In her
August 2003 evaluation, Ms. Armstrong indicated that even though
Plaintiff had over 60 days of clean time and nine months of
remission, he continued to exhibit bipolar symptoms, for which he
was taking Zyprexa, an anti-psychotic drug. [3]  (Tr.  349.)  Ms.
Armstrong assessed "severe" limitations in Plaintiff's ability to
exercise judgment and make decisions and respond appropriately to
a normal work setting.  She found "marked" limitations in his
ability to understand complex instructions, learn new tasks and
perform routine tasks, as a result of his mental condition.  (Tr.
340.)   In his letter to the Appeals Council, the Plaintiff
contended the ALJ erred when he failed to discuss Ms. Armstrong's
opinions and give reasons why they were discounted.  (Tr. 15.)

     Ms. Armstrong is a non-medical source.  Non-medical sources
are considered "other sources" under the Regulations and include
nurse practitioners, physicians' assistants, therapists, teachers,
social workers, spouses and other non-medical sources.  20 C.F. R.
404.1513(d).  Non-medical testimony can never establish a
diagnosis or disability absent corroborating competent medical
evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).
However, the ALJ is required to "consider observations by
non-medical sources as to how an impairment affects a claimant's
ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

_____

[3] Zyprexa helps manage symptoms of schizophrenia and the
manic phase of bipolar disorder.  It's generic name is olanzapine.
*The PDR Family Guide to Prescription Drugs (2005),* available at
*http://www.pdrhealth.com/drug_info/rxdrugprofiles*.

1987).   Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

Although the ALJ stated that Plaintiff was in treatment with YFA, he did not discuss in detail or specifically discount Ms. Armstrong's opinions regarding Plaintiff's functional limitations. (Tr. 28.)  However, the ALJ's failure to thoroughly discuss these opinions is harmless error.  An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995).  Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)(*citing Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

Contrary to Plaintiff's claim, there was no need for the ALJ to discount or reject Ms. Armstrong's opinions.  Her assessment of Plaintiff's "severe" and "marked" limitations while he was in DAA treatment is consistent with and supports the ALJ's finding of disability due to DAA. (Tr. 28.)  Remand simply for a discussion of her reports and evaluation would not change the ALJ's determination.  When the ALJ factored out the DAA, he found no medically established "severe" mental impairment; thus, further evaluation of Plaintiff's functional limitations was not necessary.  *Ball*, 254 F.3d at 823 (ALJ is not required to proceed past step two of the sequential evaluation if no "severe" impairment found absent DAA).  The record in its entirety reasonably supports the ALJ's finding that there is no competent medical evidence to support a diagnosis of bipolar disorder, PTSD or other mental condition that is not DAA induced.  Dr. Rosekrans,

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 14

Dr. Brown and Dr. Bostwick, as acceptable medical sources, all opined Plaintiff's clear diagnosis was substance abuse and any restrictions on Plaintiff's ability to work were caused by this abuse. [4] (Tr. 28, 211, 215, 219, 645, 669-70.) Ms. Armstrong's non-medical opinions regarding diagnoses or impairment are not considered by the Commissioner. 20 C.F.R. § 404.1513(a).

C.    Credibility

Plaintiff argues the ALJ's credibility finding is not supported by convincing evidence, and therefore, his testimony regarding his inability to work should be credited. (Ct. Rec. 13 at 14). This argument is without merit. The court has held that when the ALJ finds the claimant's testimony as to impairments and symptoms is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958-959 (9th Cir.

---

[4]    Dr. Rosekrans also opined that due to Plaintiff's history of DAA, it would take years of abstinence before non drug-induced mood disorders could be assessed. (Tr. 646.) Dr. Brown, upon learning of Plaintiff's DAA history, likewise opined that abstinence needed to be confirmed prior to further neuropsychological assessment. (Tr. 205.) Although Plaintiff apparently reported abstinence to Ms. Armstrong (Tr. 495, 663), no clinical documentation was submitted to verify sobriety for an extended period of time. Nor does Plaintiff argue that he has established a significant period of sobriety. In fact, as noted by the ALJ, Plaintiff reported continued substance abuse through 2003. (Tr. 28, 276, 615, 642.) The ALJ properly found Plaintiff's reported sobriety did not last for more than two to three months at a time. (Tr. 28.) Thus, there was no period of confirmed abstinence in which to assess Plaintiff's mental condition without the effects of DAA. Plaintiff did not meet his burden of proving DAA was not a contributing factor material to his disability. *Ball*, 254 F.3d at 823.

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 15

2002); *see also Bunnell*, 947 F.2d at 345-46.  In determining credibility, the ALJ may consider, among other things, a claimant's reputation for truthfulness and inconsistencies between his testimony and conduct.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 595.

Here, Plaintiff testified that he could not sustain work due to his weight, his left eye, sleep disturbance and "problems with his bipolar condition." (Tr. 680-81.)  As discussed above, there is no medical evidence to support his allegations of bipolar disorder.  Further, the ALJ specifically found that Plaintiff lied to Dr. Brown about his drug use, failed to tell Dr. Brown that he was in drug treatment, and admitted lying about serving in Viet Nam to his providers.  The ALJ cited Plaintiff's report to Dr. Rosekrans in November 2002, in which that he stated he lied because "it gave him a sense of belonging." (Tr. 217.)  Progress notes from YFA indicate Plaintiff was discussing his PTSD flashbacks and "being a POW and what it was like for him" as recently as July and August 2002. (Tr. 401, 415.)  Further, in his summary of the medical evidence, the ALJ cited the observations of Dr. Rosekrans and Dr. Brown concerning Plaintiff's failure to tell the truth about his drug use. (Tr. 28.)  These are clear and convincing examples of Plaintiff's lack of credibility, which are supported by the record.  The ALJ did not err in his credibility finding.

### VIII.  CONCLUSION

Plaintiff has failed to present evidence of a "severe"

ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

impairment other than those caused by DAA.  The ALJ properly found
Plaintiff disabled due to his DAA, and under a second
"differentiating" sequential evaluation factoring out the DAA,
found no medical evidence of a "severe" impairment at step two to
support a finding of disability.  His finding is supported by the
acceptable medical sources in the record.  The ALJ was not
required to proceed to step four or five, thus any claimed error
regarding his hypothetical question to the vocational expert is
moot.  Accordingly,

**IT IS ORDERED:**

     1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is
**DENIED.**

     2. Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is
**GRANTED.**

     3. Judgment for the **Defendant** shall be entered.  The District
Court Executive is directed to enter this Order, forward copies to
counsel, and close this file.

     **DATED** this 6th  day of March, 2006.


                              s/ Alan A. McDonald
                              ALAN A. McDONALD
                         SENIOR UNITED STATES DISTRICT JUDGE